FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 14 2026

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

1:26-CV-6165

MAIRO JIMÉTA AKPOSÉ, Plaintiff,

v.

PLANNED PARENTHOOD SOUTHEAST, INC., Defendant.

CIVIL ACTION FILE NO.: ____________

**JURY TRIAL DEMANDED**

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION

Plaintiff, proceeding pro se, respectfully files this Complaint against Defendant Planned Parenthood Southeast, Inc., alleging unlawful employment discrimination on the basis of race/color and religion, and unlawful retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), and 42 U.S.C. § 1981, stating as follows:

## I. JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").
2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3), (4) (civil rights).
3. Venue is proper in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because Defendant resides in this district and the unlawful employment practices complained of occurred within this district.
4. Administrative remedies have been fully exhausted:
   a. Plaintiff timely filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race/color, religion, and retaliation.
   b. The EEOC issued a Notice of Right to Sue on July 17, 2026.
   c. This Complaint is timely filed within ninety (90) days of receipt of said Notice (attached hereto as Exhibit A).

## II. PARTIES

5. Plaintiff is an African American / Black female citizen of the United States and resident of the State of Georgia, who was employed as the Interim Chief Executive Officer ("Interim CEO") of Defendant.
6. Defendant Planned Parenthood Southeast, Inc. ("PPSE" or "Defendant") is a Georgia non-profit corporation maintaining its principal executive office at 440 Moreland Ave SE, Atlanta, GA 30316.
7. At all times relevant, Defendant was an "employer" engaged in an industry affecting commerce within the meaning of Title VII, employing fifteen (15) or more employees during the relevant statutory periods.

## III. FACTUAL ALLEGATIONS

### A. Background and Leadership Appointment

8. Plaintiff served Defendant PPSE as its Interim Chief Executive Officer.
9. Throughout her tenure, Plaintiff performed her duties competently, faithfully, and met or exceeded all legitimate operational expectations.

### B. Disparate Treatment and Racial Bias in Executive Governance

10. On or about June 1, 2025, Karen Doolittle, Partner, Global Client Manager, Mercer, assumed the position of PPSE Board Chair.
11. Within her initial sixty (60) days as Board Chair, Karen Doolittle initiated targeted actions against Black executive staff, including terminating the previous Black CEO and actively attempting to alter Board bylaws to block the incoming Black Vice Chair, Beverly Jackson, from assuming the Chair role.
12. When a coordinated online smear campaign was launched by former personnel against Plaintiff—a Black female executive—Defendant approved donor and operational funds to retain a crisis public relations firm solely to represent Karen Doolittle and the Board.
13. Defendant explicitly denied and refused to authorize PR resources or legal representation for Plaintiff, who was the direct individual target of the public allegations.
14. Defendant retained the independent law firm, ReedSmith, identified by Mitchell Robinson, Senior Counsel at Seyfarth Shaw LLP and PPSE Board Governance Chair, to conduct a comprehensive investigation into the allegations levied against Plaintiff and Senior Vice President of External Affairs (a Black female).

15. Following an exhaustive inquiry, the ReedSmith investigation fully exonerated both Plaintiff and Senior Vice President of External Affairs (a Black female), finding zero wrongdoing.
16. Despite the ReedSmith exoneration, Karen Doolittle insisted that Plaintiff terminate Senior Vice President of External Affairs (a Black female) immediately without any legitimate business justification, overriding the explicit contrary counsel of Human Resources and legal counsel.
17. Notwithstanding the complete clearance by independent counsel, Board Chair Karen Doolittle approved a public statement containing punitive and damaging language toward Plaintiff.
18. Dissatisfied with the exoneration, on November 25, 2025, Karen Doolittle confirmed on a call with the Plaintiff and Chris Smurda, Senior Vice President, Willow Bridge Property, and PPSE Board Treasurer, that Defendant approved donor and operational funds to engage a second outside law firm, Townsend & Lockett, identified by Mitchell Robinson, to conduct a duplicative investigation targeting Plaintiff.
19. Following these events, Plaintiff was stripped of operational oversight and forced to coordinate daily operations through Karen Doolittle and Mitchell Robinson, and external affairs through an outside team from Planned Parenthood Federation of America ("PPFA") that intentionally comprised entirely non-Black personnel.

**C. Disparate Treatment Favoring Similarly Situated White Executives**

20. In stark contrast to the aggressive disciplinary scrutiny and manufactured investigations applied to Black executives, Defendant systematically shielded similarly situated non-Black executives who had performance and compliance failures:

    a. VP of Development Amy Royals (White female): Plaintiff repeatedly notified Karen Doolittle and the Board that Amy. Royals was failing to meet expectations. Defendant actively prohibited Plaintiff from disciplining or terminating Amy Royals.

    b. Medical Director, Dr. Megan Cohen (non-Black female), Department of Gynecology & Obstetrics and Assistant Professor at Emory University School of Medicine: Dr. Megan Cohen ceased seeing patients, instructed subordinate clinical staff to omit required medical entries in patient charts, redirected a PPSE patient to an outside private office, and bypassed administrative directives by using PPSE patient data for unauthorized academic research after Plaintiff expressly denied permission. Despite these severe clinical and ethical breaches, Defendant refused to support Plaintiff's decision to remove Dr. Megan Cohen from the position.

21. Following Plaintiff's unlawful termination, Defendant removed the Interim Medical Director (Black female) whom Plaintiff had put in place and reinstated Dr. Megan Cohen as Medical Director.

**D. Religious Hostility and Differential Terms of Employment**

22. Plaintiff is a practicing Christian.
23. In drafting public-facing communication materials concerning her executive background and leadership, Plaintiff referenced her Christian faith.
24. Following this disclosure, senior leadership expressed overt hostility toward Christian religious affiliation within the organization, including assertions from senior leadership that public identification with pastoral leadership or Christian faith was viewed negatively within the organization.
25. Board Governance Chair, Mitchell Robinson, Senior Counsel at Seyfarth Shaw LLP, repeatedly promised Plaintiff that the retained crisis PR firm would provide her with executive media training.
26. Immediately after Plaintiff openly identified her Christian faith, Defendant systematically excluded Plaintiff from all promised media training, communications strategy, and executive support, despite multiple follow-up inquiries by Plaintiff.

**E. Protected Opposition and Pretextual Termination**

27. Plaintiff engaged in statutorily protected activity by opposing Defendant's racially discriminatory practices, including:
    a. Objecting to the targeted, unjustified termination demands against Black executive, Senior Vice President of External Affairs (a Black female);
    b. Objecting to the disparate treatment between Black executives and non-Black personnel (including Amy Royals and Dr. Megan Cohen); and
    c. Objecting to the punitive, inaccurate post-investigation public statements approved by Karen Doolittle and the Board following Plaintiff's legal exoneration.
28. After Plaintiff made clear to Ms. Doolittle during their one-on-one meeting on December 9, 2025, that Board actions made it untenable to continue under such disparate conditions, the parties began negotiating an amicable separation agreement in principle.
29. During active negotiations, Defendant, through its counsel, requested that Plaintiff take three (3) consecutive business days as mandatory paid time off while awaiting formal Board sign-off.
30. At the conclusion of the third business day, on December 17, 2025, Defendant terminated Plaintiff's employment without cause and abruptly halted all negotiated separation terms.
31. Defendant subsequently replaced Plaintiff as Interim CEO with a non-Black executive.

## IV. CAUSES OF ACTION

### COUNT I: RACE AND COLOR DISCRIMINATION
### (Title VII of the Civil Rights Act of 1964 — 42 U.S.C. § 2000e-2)

32. Plaintiff realleges and incorporates paragraphs 1 through 31 as if set forth fully herein.
33. Plaintiff is a member of a protected class by virtue of her race and color (African American / Black).
34. Plaintiff was fully qualified for her position and performed her duties satisfactorily.
35. Defendant subjected Plaintiff to adverse employment actions, including denial of executive defense resources, bad-faith duplicative investigations, constructive alteration of leadership responsibilities, and termination.
36. Defendant treated similarly situated non-Black employees (including Amy Royals and Dr. Megan Cohen) significantly more favorably under comparable or worse circumstances.
37. Defendant's actions were intentional, unlawful, and taken because of Plaintiff's race and color, in violation of Title VII.

### COUNT II: RACE DISCRIMINATION
### (42 U.S.C. § 1981)

38. Plaintiff realleges and incorporates paragraphs 1 through 31 as if set forth fully herein.
39. Section 1981 guarantees all persons within the United States the same right to make and enforce contracts, including the terms, conditions, and termination of the employment relationship, as enjoyed by White citizens.
40. Defendant intentionally discriminated against Plaintiff on the basis of her race in the conditions, terms, and termination of her employment contract.
41. But for Plaintiff's race, Defendant would not have subjected Plaintiff to adverse terms of employment, pretextual investigations, and termination.

### COUNT III: RELIGIOUS DISCRIMINATION
### (Title VII of the Civil Rights Act of 1964 — 42 U.S.C. § 2000e-2)

42. Plaintiff realleges and incorporates paragraphs 1 through 31 as if set forth fully herein.
43. Plaintiff is a member of a protected class based on her sincerely held Christian religious beliefs.
44. Defendant was aware of Plaintiff's religious beliefs.

45. Following Plaintiff's disclosure of her faith, Defendant subjected Plaintiff to adverse treatment, marginalization, denial of promised executive media support, and ultimately termination.
46. Defendant maintained an organizational hostility toward Plaintiff's religious affiliation that improperly motivated the adverse employment decisions taken against her.

**COUNT IV: UNLAWFUL RETALIATION**
**(Title VII — 42 U.S.C. § 2000e-3(a) & 42 U.S.C. § 1981)**

47. Plaintiff realleges and incorporates paragraphs 1 through 31 as if set forth fully herein.
48. Plaintiff engaged in protected activity under Title VII and Section 1981 by opposing Defendant's racially discriminatory practices, including the targeted firing of Black staff, the refusal to honor independent investigative exonerations, and disparate disciplinary standards.
49. Defendant was aware of Plaintiff's protected opposition.
50. Shortly after Plaintiff asserted her protected opposition and contested discriminatory actions, Defendant subjected Plaintiff to adverse employment action by placing her on mandatory leave and terminating her employment.
51. A direct causal link exists between Plaintiff's protected activity and her termination. Defendant's stated reasons, if any, are a pretext for unlawful retaliation.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding the following relief:

A. Back pay, front pay, lost salary, bonuses, and the monetary value of lost employee benefits;

B. Compensatory damages for emotional distress, mental anguish, humiliation, and damage to professional reputation according to proof;

C. Punitive damages under Title VII and 42 U.S.C. § 1981 in an amount sufficient to punish Defendant and deter future unlawful conduct;

D. Reasonable costs and disbursements of this action; and

E. Such other and further legal or equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and claims so triable.

Dated: Oct 5, 2026

Respectfully submitted,

Mairo Jiméta Akposé, Plaintiff Pro Se
106 Cityview Court NE
Atlanta, GA 30308
(817) 627-9534
mairo@thesilvergrp.com

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/17/2026

**To:** Mairo Akpose
106 Cityview CT NE
ATLANTA, GA 30308
Charge No: 410-2026-11182

EEOC Representative and email: SHERESA SHERMAN
INVESTIGATOR
SHERESA.SHERMAN@EEOC.GOV

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2026-11182.

On behalf of the Commission,

Digitally Signed By:Darrell E. Graham
07/17/2026

Darrell E. Graham
District Director

**Cc:**
Kevin Oliver
241 Peachtree St. Ne, #40
Atlanta, GA 30303

Planned Parenthood Southeast
440 Moreland Ave SE
ATLANTA, GA 30316

Please retain this Notice for your records.

Maiko Akpose Pg 2

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 410-2026-11182 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 410-2026-11182 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.